UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUME HEALTH CORP., a Delaware corporation; and HUME HEALTH CARE LLC, a Delaware limited liability company,<br>Plaintiffs,<br>v.<br>METAFIT PHARMA SOLUTIONS LLC, a California limited liability company, d/b/a TRIMRX; and DOES 1 through 10, inclusive,<br>Defendants. | Case No.: 26-CV-4625-TWR (VET)<br><br>**ORDER (1) GRANTING PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, (2) GRANTING ORDER FOR EXPEDITED DISCOVERY; (3) GRANTING ORDER FOR ALTERNATIVE SERVICE; AND (4) ORDERING DEFENDANTS TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>(ECF No. 6) |

Presently before the Court is Plaintiffs Hume Health Corp. and Hume Health Care LLC's (collectively, "Hume's") *Ex Parte* Application for Temporary Restraining Order. (ECF No. 6, "TRO App.") Having reviewed Plaintiff's submission and the relevant law, the Court **GRANTS** Hume's *Ex Parte* Application for Temporary Restraining Order and related requests as follows.

/ / /

# BACKGROUND

## I. The Parties

Hume is a health-technology company offering smart scales, body-composition analyzers, wearable health-tracking devices, the Hume Health mobile application, and related health, telemedicine, and weight-management services. (ECF No. 1 ("Compl.") ¶ 14; *accord* ECF No. 6-1 ("TRO Mem.") at 8.) Hume has used the HUME HEALTH mark in United States commerce since at least December 31, 2020, in connection with these products and services. (*See* Compl. ¶¶ 16–17; *accord* TRO Mem. at 8.) Hume owns trademark registrations associated with HUME in the United States and internationally, including HUME HEALTH, HUMECARE, AND HUMERX. (*See* Compl. ¶¶ 17–18; *accord* TRO Mem. at 8.) Hume also has pending United States trademark applications, including a "distinctive hourglass logo (consisting of two vertical, symmetrical shapes facing each other, each with a straight outer side and a wavy inner side, creating a negative space between them that resembles an hourglass)[.]" (*See* Compl. ¶¶ 19–20 (citations omitted).) In addition to its registrations, Hume owns common law trademark rights in the HUME marks, "arising from its continuous and substantially exclusive use of those marks in United States commerce." (*Id.* ¶ 21.)

Defendant MetaFit Pharma Solutions LLC is a limited liability company organized under California law and does business under the name "TrimRX." (*Id.* ¶ 8.) Defendants Does 1 through 10 are individuals or entities unknown to Plaintiffs who registered, own, operate, control, finance, or profit from the "Infringing Domains." *See infra* Section II.

## II. Factual History

Hume operates its official website at www.humecare.com, where it markets its physician-led telehealth weight-management program, which combines prescription GLP-1 medication with body-composition scanning, supportive therapies, clinician access, and the Hume Health app. (*Id.* ¶ 15.) Below is a capture of humecare.com from August 14, 2026:

/ / /




On July 1, 2026, the following domains were registered to unknown registrants[1]: humecare.org, hume-care.org, and humecare.net (the "Infringing Domains"). (*See id.* ¶ 23; *accord* TRO Mem. at 8.) Beginning in August 2026, the Infringing Domains "resolve to websites that are reworded copies of the website at humecare.org." (*See* Compl. ¶ 26.) "Each declares itself Hume's official website . . . and each markets the same 'Hume Care RX' program, promotes the same 'Free Hume Health App,' names the same purported clinical personnel, and repeats the same outcome claims and statistics [as humecare.org], with only the wording varied." (*Id.*) Below is a capture of humecare.org[2] from August 14, 2026:

---

[1] The registrants' identities are concealed by a privacy-protection service which "redacts the registrant's handle, name, organization, telephone number, and mailing address" and none of the registrations discloses a registrant email address. (Compl. ¶ 23; *accord* TRO Mem. at 10–12.)

[2] The websites at hume-care.org and humecare.net appear the same or substantially similar to humecare.org. (*See* Compl. ¶¶ 27, 28, 32, 34–36; *accord* TRO Mem. at 9–10.)




Each website associated with the Infringing Domains (the "Infringing Websites") holds itself out as Hume's official website and claims ownership of Hume's trademarks. (*See id.* ¶¶ 28–29; *accord* TRO Mem. at 9.) The Infringing Websites instruct visitors to contact email addresses associated with Hume's actual domain (*e.g.*, support@humecare.com) for refund requests, cancellations, legal questions, and accessibility issues. (*See* Compl. ¶ 31; *accord* TRO Mem. at 9.) The Infringing Websites also solicit personal identifying and health information from visitors as a claimed prerequisite for prescription GLP-1 medication. (*See* Compl. ¶ 37; *accord* TRO Mem. at 10.) The website at humecare.org also "sells recurring paid subscriptions that renew automatically and collects consumers' payment information." (Compl. ¶ 38; *accord* TRO Mem. at 10.)

/ / /

/ / /

## III. Procedural History

On July 15, 2026, Hume filed a complaint under the Uniform Domain Name Dispute Resolution Policy ("UDRP") concerning humecare.org. (Compl. ¶ 42.) "Hume has since amended the complaint and the proceeding remains pending." (*See id.*)

On August 12, 2026, Hume filed the operative complaint. (*See id.*) "Hume brings this action to obtain relief the UDRP cannot provide, including damages and injunctive relief against Defendants' broader scheme across all three of the Infringing Domains." (*Id.* ¶ 14.) Hume alleges eight causes of action: Cybersquatting, 15 U.S.C. § 1125(d); Trademark Infringement, 15 U.S.C. § 1114; False Designation of Origin and Unfair Competition, 15 U.S.C. § 1125(a)(1)(A); False Advertising, 15 U.S.C. § 1125(a)(1)(B); Violation of the California Anti-Phishing Act of 2005, Cal. Bus. & Prof. Code § 22948.2; Unfair Competition, Cal. Bus. & Prof. Code § 17200; False Advertising, Cal. Bus. & Prof. Code § 17500; and Common Law Trademark Infringement and Unfair Competition. (*See* Compl.)

On August 13, 2026, Hume filed an *Ex Parte* Application for Temporary Restraining Order ("TRO Application"). (*See* TRO App.) The TRO Application also requests the Court issue an order to show cause why a preliminary injunction should not issue, an order authorizing expedited discovery, and an order authorizing alternative service. (*See id.*)

## TEMPORARY RESTRAINING ORDER

## I. Legal Standard

Federal Rule of Civil Procedure 65 authorizes a trial judge to grant a temporary restraining order under certain circumstances "to preserve the status quo and the rights of the parties until a final judgment issues in the cause." *See Ramos v. Wolf*, 975 F.3d 872, 887 (9th Cir. 2020) (quoting *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010)). "A preliminary injunction [or temporary restraining order] ... is not a preliminary adjudication on the merits[,] but rather a device for preserving the status quo and preventing the irreparable loss of rights before judgment." *Id.* (alteration in original) (quoting *Sierra On-Line, Inc. v. Phx. Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984)).

The status quo in this context "refers not simply to any situation before the filing of a lawsuit, but instead to 'the last uncontested status which preceded the pending controversy[.]'" *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)).

"The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). "A party seeking a preliminary injunction must meet one of two variants of the same standard." *Ramos*, 975 F.3d at 887 (quoting *All. for Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017)).

> Under the original standard, plaintiffs seeking a preliminary injunction must establish that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest.

*Id.* (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)). "The Ninth Circuit employs an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the *Winter* standard." *Id.* (citing *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011)).

> Under this alternate standard, [the court] weigh[s] the preliminary injunction factors on a sliding scale, such that where there are only serious questions going to the merits—that is, less than a likelihood of success on the merits a preliminary injunction may still issue so long as the balance of hardships tips sharply in the plaintiff's favor and the other two factors are satisfied.

*Id.* at 887–88 (internal quotation marks omitted) (quoting *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018)). In other words, "[a] preliminary injunction may be granted ... where the moving party demonstrates either '(1) a combination of probable success on the merits *and* the possibility of irreparable injury *or* (2) the existence of serious questions going to the merits *and* that the balance of hardships tips sharply in [its] favor.'" *Grocery Outlet Inc. v. Albertson's Inc.*, 497 F.3d 949, 951 (9th Cir. 2007) (emphasis and second alteration in original) (quoting *Sardi's Rest. Corp. v. Sardie*, 755 F.2d 719, 723 (9th Cir. 1985)).

/ / /

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22, 129 S.Ct. 365. Consequently, there are several limitations on when "[t]he court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney," *see* Fed. R. Civ. P. 65(b), and "[t]he court may issue a ... temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." *See* Fed. R. Civ. P. 65(c). Further, "every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1).

"In deciding a motion for a preliminary injunction, the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'" *Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (quoting *Dymo Indus., Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)). Whether to "grant ... a preliminary injunction is a matter committed to the discretion of the trial judge[,]" and that decision will be "reverse[d] only if that discretion is abused or the decision is based on an erroneous legal standard or clearly erroneous findings of fact." *See Sierra On-Line*, 739 F.2d at 1421.

## II. Discussion

Hume seeks to temporarily enjoin Defendants and all others acting in concert with them from (a) using the HUME marks or any confusingly similar mark, name, logo, or domain name, including but not limited to HUMECARE, HUME CARE, HUMECARE+, HUME HEALTH, and Hume's hourglass logo; (b) representing that Defendants or their products or services are affiliated with, sponsored by, or approved by Hume, including any claim to be Hume's "official" website or to be operated by Hume Health Corp.; (c) using any email address, contact information, or customer-service channel that refers to Hume or the humecare.com domain; (d) publishing content copied or derived from Hume's website;

and (e) soliciting identifying, health, or payment information from any person by representing themselves to be Hume. (TRO App. at 4–5; *see* Compl. at 20–21.) The Court analyzes Hume's request according to the *Winter* factors. *See supra* Section I.

**A. Likelihood of Success on the Merits**

Depending on its showing of irreparable harm, Plaintiff must demonstrate either a probability of success on the merits or the existence of serious questions going to the merits. *See Grocery Outlet Inc.*, 497 F.3d at 951 (quoting *Sardi's Rest.*, 755 F.2d at 723.)

*1. Cybersquatting, 15 U.S.C. § 1125(d)*

The Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), requires a plaintiff to prove that "(1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted with bad faith intent to profit from that mark." *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218–19 (9th Cir. 2010) (internal quotations omitted). Section 1125(d) lists factors a court may consider in determining whether a defendant has a bad faith intent, including the use of the trademark or other intellectual property rights of a plaintiff in the domain name and the plaintiff's prior use of the domain name in connection with the bona fide offering of any goods or services. 15 U.S.C. §§ 1225(d)(1)(B)(i)(I), (III).

As to the first element, Hume attached to its TRO Application copies of the registration data records it obtained using the ICANN Registration Data Lookup Tool for each of the three Infringing Domains (ECF No. 6-6) as well as captures of pages of each website, taken on August 12, 2026 (ECF Nos. 6-7, 6-8, 6-9).

As to the second element, the domain names of each of the Infringing Domains is the same or confusingly similar to Hume's official website domain. (*See* Compl. ¶ 27 ("The domains humecare.org and humecare.net are identical to the mark and differ from, Hume's genuine domain, humecare.com, only in their top-level domains; hume-care.org differs only by the addition of a hyphen.").)

/ / /

As to the third element, Hume attached to its TRO Application copies of trademark registry records for Hume's registrations, including U.S. Reg. No. 8,123,414 (HUME HEALTH), U.S. Reg. No. 8,140,787 (HUMEHEALTH & Design), U.K. Reg. No. UK00004083512 (HUME HEALTH), and International Reg. Nos. 1926141 (HUMECARE), 1924561 (HUME HEALTH), and 1926354 (HUMERX). (ECF No. 6-5.) Hume also indicates that it has used the HUME HEALTH mark in United States commerce since at least December 31, 2020. (Compl. ¶ 16.)

Accordingly, Hume has carried its burden of establishing that it is likely to succeed on the merits of its cybersquatting cause of action against Defendants.

*2. Trademark Infringement, 15 U.S.C. § 1114*

To establish a claim for trademark infringement under the Lanham Act, 15 U.S.C. § 1114, a plaintiff must establish that the defendant is using a mark confusingly similar to a valid, protectable trademark owned by the plaintiff. *Brookfield Communications, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999). The test for likelihood of confusion is whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks. *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002).

Hume demonstrates that each of the Infringing Websites purport to be Hume's official website and falsely claim ownership of Hume's trademarks. (*See* Compl. ¶ 30.) Impersonation of Hume's official website, including falsely claiming to be operated by Hume Health Corp. (*see id.* ¶ 29), is likely to confuse a reasonably prudent consumer as to the origin of the good or service.

Accordingly, Hume has carried its burden of establishing that it is likely to succeed on the merits of its trademark infringement cause of action against Defendants.

*3. False Designation of Origin and Unfair Competition, 15 U.S.C. § 1125(a)(1)(A)*

A false designation of origin and unfair competition claim under the Lanham Act requires proof that a defendant "(1) use[d] in commerce (2) any word, false designation of

origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services." *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007). The "core element" is the "likelihood of confusion, *i.e.*, whether the similarity of the marks is likely to confuse customers about the source of the products." *Id.* (quoting *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007)).

As to the first and second elements, Hume contends that the website humecare.org "sells recurring paid subscriptions that renew automatically and collects consumers' payment information" (Compl. ¶ 38) and attaches to its TRO Application screen captures of pages from that website including terms of service stating that the site and its "HumeCare+" service are "operated by Hume Health Corp." and terms providing for automatically renewing paid subscriptions (ECF No. 6-7).

As to the third element, impersonation of Hume's official website is likely to cause confusion or misrepresent the characteristics of Defendants' goods and services for the reasons explained above. *See supra* Section II.A.2.

Accordingly, Hume has carried its burden of establishing that it is likely to succeed on the merits of its false designation of origin and unfair competition cause of action against Defendants.

4. *False Advertising, 15 U.S.C. § 1125(a)(1)(B)*

A false advertising claim under the Lanham Act requires proof of the following elements:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Southland Sod Farms v. Stover Seed Co.*, 108 F. 3d 1134, 1139 (9th Cir. 1997).

As to the first, second, third, and fourth elements, Hume demonstrates that Defendants' impersonation of its website to sell identical goods and services constitutes a false statement of fact by Defendants about Hume's own product, that has a tendency to deceive a substantial segment of its audience, is likely to influence a purchasing decision, that Defendants have caused to enter interstate commerce, for the reasons explained above. *See supra* Sections II.A.1–3.

As to the fifth element, Hume shows it has been or is likely to be injured by Defendants' false statements because "[c]onsumers who believe they are dealing with Hume are [] induced to hand over sensitive health data, payment information, and to expect prescription medication from an entity that has actively concealed its true identity behind Hume's." (Compl. ¶ 39.) Additionally, Defendants false statements will continue to cause harm "including loss of control over [Hume's] reputation and the goodwill associated with the HUME [m]arks, . . . as well as diverted customers, lost sales, and exposure to consumer complaints and potential liability arising from conduct Hume cannot control." (*Id.* ¶ 41.)

Accordingly, Hume has carried its burden of establishing that it is likely to succeed on the merits of its false advertising cause of action against Defendants.

### 5. *Violation of the California Anti-Phishing Act of 2005, Cal. Bus. & Prof. Code § 22948.2*

California's Anti-Phishing Act of 2005 makes it unlawful for "any person, by means of a Web page, electronic mail message, or otherwise through use of the Internet, to solicit, request, or take any action to induce another person to provide identifying information by representing itself to be a business without the authority or approval of the business." Cal. Bus. & Prof. Code § 22948.2. "Identifying information" includes "[b]ank account number," "[p]ersonal identification number (PIN)," "[a]ccount password," and "[a]ny other piece of information that can be used to access an individual's financial accounts or to obtain goods or services." Cal. Bus. & Prof. Code § 22948.1(b). Additionally, "[a]n individual who is adversely affected by a violation of Section 22948.2 may bring an action

/ / /

. . . against a person who has directly violated Section 22948.2." Cal. Bus. & Prof. Code § 22948.3(a)(2).

To begin, Hume demonstrates that Defendants, by means of a Web page, induce consumers to provide identifying information by falsely representing itself as Hume Health Corp. without Hume's authority, for the reasons explained above. *See supra* Sections II.A.1–4. Hume also demonstrates that humecare.org sells automatically renewing paid subscriptions, requiring consumers' personal and financial information. *See supra id.* Hume further demonstrates that its reputation and goodwill is adversely affected. *See supra* Section II.A.4.

Accordingly, Hume has carried its burden of establishing that it is likely to succeed on the merits of its California Anti-Phishing Act of 2005 cause of action against Defendants.

*6. Unfair Competition, Cal. Bus. & Prof. Code § 17200*

California's Unfair Competition Law permits civil recovery for "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising[.]" Cal. Bus. & Prof. Code § 17200.

For the reasons explained above, *see supra* Sections II.A.1–5, Hume demonstrates that Defendants have engaged in unlawful, unfair, or fraudulent business acts or practices and unfair, deceptive, untrue or misleading advertising.

Accordingly, Hume has carried its burden of establishing that it is likely to succeed on the merits of its California Unfair Competition Law cause of action against Defendants.

*7. False Advertising, Cal. Bus. & Prof. Code § 17500*

California's False Advertising Law "prohibits any unfair, deceptive, untrue, or misleading advertising." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 967 n.2 (9th Cir. 2016).

For the reasons explained above, *see supra* Section II.A.6, Hume demonstrates that Defendants have engaged in unfair, deceptive, untrue or misleading advertising.

Accordingly, Hume has carried its burden of establishing that it is likely to succeed on the merits of its California False Advertising Law cause of action against Defendants.

*8. Common Law Trademark Infringement and Unfair Competition*

"The tests for infringement of a federally registered mark under § 32(1), 15 U.S.C. § 1114(1), infringement of a common law trademark, unfair competition under § 43(a), 15 U.S.C. § 1125(a), and common law unfair competition involving trademarks are the same." *Kythera Biopharmaceuticals, Inc.*, 998 F.Supp.2d at 897 (citing *Grey*, 650 F.Supp. at 1173). Additionally, "[a] claim for false designation of origin under 15 U.S.C. § 1125 requires proof of the same elements as a claim for trademark infringement under 15 U.S.C. § 1114." *Brookfield Commc'ns, Inc.*, 174 F.3d at 1046 n.6. Moreover, "the Ninth Circuit 'has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code [section] 17200 are substantially congruent to claims made under the Lanham Act.'" *Kythera Biopharmaceuticals, Inc.*, 998 F.Supp.2d at 897 (quoting *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir.1994)).

Accordingly, for the reasons explained above, *see supra* Sections II.A.1–7, Hume has carried its burden of establishing that it is likely to succeed on the merits of its common law trademark infringement and unfair competition cause of action against Defendants.

In light of the foregoing, the Court **FINDS** Hume has established a likelihood of success with respect to each cause of action against Defendants.

**B. Irreparable Harm**

A party seeking injunctive relief need only demonstrate irreparable harm is likely. *See Small v. Avanti Health Sys.*, LLC, 661 F.3d 1180, 1191 (9th Cir. 2011). Irreparable harm is harm for which there is no adequate legal remedy, such as an award of damages. *See Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014).

As for its Lanham Act claims, Hume argues that because it has established a likelihood of success on the merits, it is entitled to a rebuttable presumption of irreparable harm. (TRO Mem. at 21 (citing 15 U.S.C. § 1116(a)).) As for its remaining claims, Hume argues that the record also independently establishes irreparable harm, including evidence of loss of control over business reputation and damage to goodwill. (*Id.* (citing Ninth

/ / /

Circuit caselaw recognizing that loss of control over business reputation and damage to goodwill qualify as irreparable harm).)

Considering all three of the Infringing Websites are live and actively soliciting consumers' personal and financial information (*see* TRO Mem. at 22), the Court **FINDS** Hume will suffer irreparable harm.

### C. Balance of Equities

To qualify for injunctive relief, a plaintiff must establish that the balance of equities tip in its favor. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009). "In assessing whether the plaintiff[] ha[s] met this burden, the district court has a duty to balance the interests of all parties and weigh the damage to each." *Id.*

Hume's requested relief is limited to enjoining Defendants' use of its marks or any confusingly similar marks, name, logo, or domain name; representation that their products or services are affiliated with, sponsored by, or approved by Hume; use of any email address, contact information, or customer-service channel that refers to Hume; and solicitation of identifying, health, or payment information from any person by representing themselves to be Hume. (TRO App. at 4–5.) "Defendants remain free to market weight-loss services under their own TrimRX brand, on their own domains, with their own content." (TRO Mem. at 23.)

Defendants would face little harm if they were enjoined from impersonating Hume, something they were never permitted to do to in the first place. Moreover, without this order, Hume would face reputational damage and loss of goodwill. For these reasons, the Court **FINDS** the balance of equities tip in Hume's favor.

### D. Public Interest

The public interest prong primarily addresses the impact on nonparties. *See Bernhardt v. Los Angeles Cnty.*, 339 F.3d 920, 931 (9th Cir. 2003). "It embodies the U.S. Supreme Court's direction that, in exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* (internal quotations omitted).

Preventing consumer confusion serves the public interest. *See Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 (9th Cir. 2009). Further, permitting consumers to unknowingly disclose personal and financial information to a provider it believes to be Hume clearly goes against the public interest. Thus, the Court **FINDS** granting Plaintiff's request would serve the public interest.

In sum, Hume's Application for Temporary Restraining Order satisfies the *Winter* factors.

**E. Bond**

Rule 65(c) vests the district court with discretion as to whether to require a bond and, if so, the amount of the bond required, if any. *See Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Where the court "concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct," the court may altogether "dispense with the filing of a bond." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen*, 320 F.3d at 919).

Because granting Hume's Application for a Temporary Restraining Order poses no likelihood of harm to Defendants, the Court dispenses with the bond requirement at this time.

**F. Absence of Notice to Defendants**

Rule 65(b)(1) provides:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). The Ninth Circuit has also recognized that an *ex parte* temporary restraining order "may be appropriate 'where notice to the adverse party is impossible

either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing.'" *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir. 1984)).

As previously explained, Hume pleads specific facts showing it will suffer immediate and irreparable injury before Defendants can be heard in opposition. (*See generally* Compl.; TRO Mem.) Additionally, Hume's counsel details his efforts to identify operator contact information for the Infringing Websites and asserts that he was unable to uncover any information that would permit service via traditional means. (*See* ECF No. 6-2 ("Creedon Decl.") ¶¶ 16–20; *see also* ¶ 25 (requesting alternative service via electronic mail because registration records disclose no registrant name or address).)

Considering the foregoing, the Court concludes it is appropriate to issue the temporary restraining order without notice to Defendants.

## EXPEDITED DISCOVERY

### I. Legal Standard

Under Federal Rule of Civil Procedure 26, discovery is generally not permitted until the parties have conferred pursuant to Rule 26(f). Fed. R. Civ. P. 26(d)(1). "[H]owever, in rare cases, courts have made exceptions, permitting limited discovery to ensue after filing of the complaint to permit the plaintiff to learn the identifying facts necessary to permit service on the defendant." *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578–80 (N.D. Cal. 1999) (collecting cases).

### II. Discussion

Hume argues the Court should authorize expedited discovery so that it can identify the registrant of the Infringing Domains for the purpose of effectuating service on Defendants. (TRO Mem. at 24.) In determining whether Hume's request is warranted, the Court applies four principals articulated in *Columbia Ins.*, 185 F.R.D. 573, 578–80.

First, Hume should identify the missing parties with sufficient specificity such that the Court can determine whether those parties are a real person or entity who could be sued

in federal court (*i.e.*, to satisfy jurisdiction and justiciability requirements). *See Columbia Ins.*, 185 F.R.D. at 578. Hume asserts it has identified the missing parties with sufficient specificity by showing there were "three domain names registered on one day through one registrar, resolving to three operating commercial websites that transact with United States consumers." (TRO Mem. at 24 (citations omitted).) Hume further asserts it has identified the registrar, the privacy-protection service, the hosting provider, and the payment processors serving the Infringing Websites, which it contends are "reasonably likely to hold identifying information for the registrant and operator." (TRO Mem. at 25 (citing Creedon Decl. ¶ 24).) Hume explains:

> The registrar's disclosure in the UDRP proceeding confirms both that it holds registrant records and that those records, standing alone, are unreliable; the account, billing, and payment records behind the registration — the records showing who actually paid for and controls these domain names — are what the requested subpoenas are aimed at.

(*Id.* (citing Creedon Decl. ¶¶ 19, 24) (additional citation omitted).) The Court therefore finds that Hume has made a satisfactory showing that there is an actual person (or persons) behind the Infringing Domains who would be amenable to suit in federal court.[3]

Second, Hume should identify all previous steps taken to locate the missing parties. *See Columbia Ins.*, 185 F.R.D. at 579. As previously explained with respect to the Court's analysis of whether it is appropriate to issue the temporary restraining order without notice to Defendants, *see* "Temporary Restraining Order" *supra* Section II.F, Hume has made a good faith effort to identify the missing parties.

Third, Hume should show that its suit against Defendants could withstand a motion to dismiss. Based on the Court's analysis regarding Hume's likelihood of success on the merits, *see* "Temporary Restraining Order" *supra* Section II.A, the Court finds that Hume

---

[3] Hume also demonstrates that the Court is likely to have specific jurisdiction over the missing parties because the Infringing Websites "solicit[] personal identifying information, health information, and payment information from consumers in California" and "offer[] to enroll California consumers in automatically renewing paid subscriptions for prescription GLP-1 medication[.]" (Compl. ¶ 12.)

has plead sufficient facts such that at least one of its causes of action could withstand a motion to dismiss.

Fourth, Hume should provide the Court with a statement of reasons justifying the specific discovery requested as well as identification of a limited number of persons or entities on whom discovery process might be served and for which there is a reasonable likelihood that the discovery process will lead to identifying information about defendant that would make service of process possible. *Columbia Ins.*, 185 F.R.D. at 580 (citation omitted). Hume specifically requests:

> [L]eave to serve immediate subpoenas, limited to identifying the persons who registered and operate the Infringing Domains and the persons receiving funds from the Infringing Websites, on the following: (a) Hostinger, as registrar of record, as the provider of the privacy protection service, and as the operator of the name servers at dns-parking.com; (b) any hosting provider identified by the registrar as serving the Infringing Websites; and (c) any payment processor identified as processing transactions for the Infringing Websites. Each is reasonably likely to hold registration, billing, or payment records identifying the registrant and operator. The disclosure Hostinger has already made in the UDRP proceeding shows that it holds registrant records and will produce them when required to do so (Ex. H), and the apparent falsity of the data it disclosed makes the account, billing, and payment records behind that registration (the records that identify who actually paid for and controls these domain names) the necessary object of discovery. Hume will serve any subpoena promptly and will report the results to the Court in advance of the hearing on the order to show cause.

(Creedon Decl. ¶ 24) The Court finds this request specific and limited enough to warrant expedited discovery.

Accordingly, the Court **GRANTS** Hume's request for expedited discovery.

## ALTERNATIVE SERVICE

### I. Legal Standard

Federal Rule of Civil Procedure 4(f)(3) permits service abroad "by other means not prohibited by international agreement, as the court orders." The method of service is permissible if directed by the court and not prohibited by international agreement. *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) (citations omitted).

Moreover, there is no requirement than service be first attempted by other means. *Id.* at 1016–18. Additionally, service via electronic mail may be appropriate if it is the method most likely to reach the defendant. *See id.* at 1016–18 (collecting cases).

**II. Discussion**

Hume demonstrates why it cannot achieve service via traditional means, as well as why electronic mail is most likely to reach Defendants. (*See* TRO Mem. at 13–14.) Accordingly, the Court finds alternative service appropriate here.

**CONCLUSION**

For the reasons set forth above, the Court **GRANTS** Hume's Application for Temporary Restraining Order and **ENJOINS** Defendants and all others acting in concert with them having actual notice of this Order from (a) using the HUME marks or any confusingly similar mark, name, logo, or domain name, including but not limited to HUMECARE, HUME CARE, HUMECARE+, HUME HEALTH, and Hume's hourglass logo; representing that Defendants or their products or services are affiliated with, sponsored by, or approved by Hume, including any claim to be Hume's "official" website or to be operated by Hume Health Corp.; (c) using any email address, contact information, or customer-service channel that refers to Hume or the humecare.com domain; (d) publishing content copied or derived from Hume's website; and (e) soliciting identifying, health, or payment information from any person by representing themselves to be Hume.

Additionally, the Court **ORDERS** as follows:

1. Hume **SHALL SERVE** Defendants with a copy of this Order no later than August 19, 2026;

2. This Order **SHALL BE BINDING** upon the Parties in this action and all others who receive actual notice of this Order; and

3. Defendants **SHALL SHOW CAUSE** on or before August 25, 2026, why an Order should not be issued pursuant to Federal Rule of Civil Procedure 65 preliminarily enjoining Defendants and all others acting in concert with them from the conduct identified above;

4. The Court **SETS** an in-person hearing on the Court's Order to Show Cause for August 27, 2026, at 11:00 a.m. in Courtroom 14A, United States District Court for the Southern District of California, 333 West Broadway, San Diego, CA 92101.

**IT IS SO ORDERED.**

Dated: August 14, 2026

Honorable Todd W. Robinson
United States District Judge